14 Cal.App.3d 935 (1971)
92 Cal. Rptr. 545
THE PEOPLE, Petitioner,
v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent; ROBERT DOYLE FULLER, Real Party in Interest.
Docket No. 28731.
Court of Appeals of California, First District, Division One.
January 6, 1971.
*938 COUNSEL
Thomas C. Lynch and Evelle J. Younger, Attorneys General, Derald E. Granberg, John T. Murphy and Karl J. Uebel, Deputy Attorneys General, for Petitioner.
No appearance for Respondent.
Trumbull & Rush and John A. Trumbull for Real Party in Interest.
OPINION
SIMS, J.
The People by petition for writ of mandate (Pen. Code, § 1538.5, subd. (o)) seek appellate review of an order of the trial court which granted *939 a motion to suppress evidence consisting of a plastic bag allegedly containing marijuana. The motion was interposed on behalf of a defendant who is accused by an information of possession of marijuana in violation of section 11530 of the Health and Safety Code, and possession of an alcoholic beverage by a minor in violation of section 25662 of the Business and Professions Code. The evidence in question[1] was secured from the defendant when he was subjected to a strip search in connection with his being placed in custody in the county jail following his arrest for possession of alcohol by a minor,[2] and for contributing to the delinquency of a minor (see Pen. Code, § 272).
*940 An alternative writ of mandate has been issued commanding respondent superior court to vacate and set aside its order granting defendant's motion, or to show cause why it has not done so. Following return to the alternative writ the matter has been reviewed on a record consisting of the petition, the return, the clerk's transcript in respondent court, the transcript of the preliminary examination which led to the filing of the information, and a transcript of the hearing on the motion at which the defendant and the passenger in his vehicle testified.
The People urge that there was reasonable cause to arrest the defendant, and that the search was a proper incident of that arrest. The defendant, as real party in interest, has not pursued his original argument which attempted to limit the scope of the arresting officer's activities to the issuance of a traffic citation for a mechanical violation. He concedes that on the basis of proper observations the officer could properly detain and cite the defendant for a defective license plate lamp in violation of section 24601 of the Vehicle Code, for keeping an opened beverage container in a vehicle in violation of section 23123 of that code, and for possession of an alcoholic beverage in violation of the provisions of section 23123.5 of the Vehicle Code (see fn. 2 above). He asserts, and it is herein concluded, that the last cited section governs the circumstances of defendant's arrest to the exclusion of the general law governing possession of an alcoholic beverage by a minor under which he has been charged; that under the arrest provisions of the Vehicle Code he should either have been merely cited, or, in any event, should have been given an opportunity to post bail; and that the trial court was warranted in finding that there was no reasonable cause to arrest, incarcerate and search the defendant for the offense of contributing to the delinquency of his companion.
The facts as revealed by the record are as follows:
On the evening of March 30, 1970, at about 9:30 p.m. according to the arresting officer, or an hour or an hour and a half later according to the defendant, the officer observed a Triumph automobile proceeding westbound on San Marin Drive in Novato without any illumination of its license plate light (see Veh. Code, § 24701). The officer initiated a traffic stop by using his emergency equipment. The officer testified that the vehicle operated by the defendant continued its forward progress for approximately three-quarters of a mile through San Marin Drive to its intersection with Novato Boulevard, where it then turned to the right and proceeded approximately 40 feet before the driver pulled the vehicle to the curb and stopped. The defendant testified that he first noticed the red light of the police car as he was stopped for the stop sign at Novato Boulevard, and that he then promptly pulled around the corner and parked at the edge of the roadway.
*941 The officer observed no furtive action in the car while he was following it, but as the vehicle came to a stop he saw the passenger duck down for a moment and then come up. The officer got out of the patrol car, and the defendant, who proved to be the driver of the other vehicle, alighted leaving his passenger behind, and walked toward the officer. As they met the officer noticed the odor of alcohol about the defendant's person. The officer advised the defendant he was stopped for an equipment violation, but did not tell him that he was under arrest. At the request of the officer, the defendant who was known to the officer to be a minor, produced a driver's license which showed him to be 20 years old. (He was born January 12, 1950.)
According to the officer, a couple of months previously he had observed the defendant kick someone in the head, and because he did not trust him, he requested the defendant to precede him on the left as he walked to the passenger side of the vehicle. The defendant testified that he remained between the two cars watching the officer as he went to the defendant's car. There the officer observed an open can of what appeared to be Coor's beer between the legs of the passenger, who was known to the officer as a youth in his teens. (According to the defendant the passenger was 17 years old at the time.) In the baggage compartment, directly to the rear of the seat, an unopened can of beer lay on some clothing.
The officer had broadcast that he was making a traffic stop and he awaited a backup officer. On the latter's arrival, a minute later, he requested the passenger to alight and he announced to both the passenger and the driver that they were under arrest for possession of alcohol by minors. At the hearing on the motion to suppress the defendant and his passenger admitted that the passenger had an open can of beer in the front seat. The former contested the ability of the officer to observe it because of the nature of the construction of the car, and the latter testified that his arrest was contemporaneous with or after he left the car at the officer's command.
The officer ordered the youths to proceed around the opposite side of the vehicle and to place their hands on top of the car. While complying, the passenger dropped a rolled-up match box cover which appeared to be what is commonly called a "crutch." It was retrieved by the officer who noted that it had burn marks on it. He thereupon advised the passenger that he was also under arrest for an additional charge of possession of paraphernalia (see Health & Saf. Code, § 11555). A search of the defendant's pockets and clothing produced nothing incriminating.
The defendant was informed that he was charged with possession of *942 alcohol by a minor, and contributing to the delinquency of a minor. He and his passenger, who was charged as outlined above, were transported to the county jail by the arresting officer. The other officer, who had been searching the inside of the defendant's car (see fn. 1 above), was left at the scene to inventory the contents of the vehicle.
The defendant was given a body search at the sheriff's office in conformance with normal booking procedure. After taking off his shirt and shoes he unbuckled his pants and removed a cellophane bag from inside the crotch of his pants. He handed the bag, which contained a material which proved to be marijuana, to the officer and said, "You didn't think I'd hold anything back from you."

I
(1) Upon observing the equipment failure the officer had the unquestioned right to stop the offending vehicle. (See People v. Villafuerte (1969) 275 Cal. App.2d 531, 534-535 [80 Cal. Rptr. 279]; People v. Brown (1969) 272 Cal. App.2d 448, 450 [77 Cal. Rptr. 438]; People v. Bordwine (1968) 268 Cal. App.2d 290, 292 [74 Cal. Rptr. 1]; People v. Cacioppo (1968) 264 Cal. App.2d 392, 396-397 [70 Cal. Rptr. 356]; People v. Shapiro (1963) 213 Cal. App.2d 618, 620 [28 Cal. Rptr. 907]; and People v. Sanson (1957) 156 Cal. App.2d 250, 253 [319 P.2d 422].)
(2) When a person is arrested for a violation of the Vehicle Code other than a felony (Veh. Code, § 40301), he must be given a citation (§ 40500) unless appearance before a magistrate is mandatory (§ 40302), or is optional, and the officer elects to take the offender before a magistrate (§ 40303). (See Morel v. Superior Court (1970) 10 Cal. App.3d 913, 916-917 [89 Cal. Rptr. 297]; People v. Mercurio (1970) 10 Cal. App.3d 426, 430-431 [88 Cal. Rptr. 750]; People v. Weitzer (1969) 269 Cal. App.2d 274, 294 [75 Cal. Rptr. 318]; People v. Van Sanden (1968) 267 Cal. App.2d 662, 665 [73 Cal. Rptr. 359]; People v. Wohlleben (1968) 261 Cal. App.2d 461, 463-465 [67 Cal. Rptr. 826]; and People v. Shapiro (1963) 213 Cal. App.2d 618, 621 [28 Cal. Rptr. 907].)
(3) Although a traffic violator is technically under arrest during the period immediately preceding his execution of a promise to appear, neither he nor his vehicle may be searched on that ground alone. (People v. Weitzer, supra, 269 Cal. App.2d 274, 290 and 294; and see Morel v. Superior Court, supra, 10 Cal. App.3d 913, 917; People v. Mercurio, supra, 10 Cal. App.3d 426, 429; Martinez v. Superior Court (1970) 7 Cal. App.3d 569, 577 [87 Cal. Rptr. 6]; Bergeron v. Superior Court (1969) 2 Cal. App.3d 433, 435 [82 Cal. Rptr. 711]; People v. Van Sanden, supra, 267 Cal. App.2d 662, *943 665; People v. Shapiro, supra, 213 Cal. App.2d 618, 621; and People v. Sanson, supra, 156 Cal. App.2d 250, 253.) The right to search must depend on other circumstances.[3] If the offense is one where the accused is to be taken before a magistrate, because of the mandate of the Vehicle Code, or because of the exercise by the officer of an option granted by the code, there are varying precedents as to the extent to which the accused may be searched. (Cf. Morel v. Superior Court, supra, 10 Cal. App.3d 913, 917-919; People v. James (1969) 1 Cal. App.3d 645, 648 [81 Cal. Rptr. 845]; People v. Nunn (1968) 264 Cal. App.2d 919, 923-924 [70 Cal. Rptr. 869]; and People v. Reed (1962) 202 Cal. App.2d 575, 578-579 [20 Cal. Rptr. 911], with People v. Mercurio, supra, 10 Cal. App.3d 426; and People v. Dukes (1969) 1 Cal. App.3d 913, 916 [82 Cal. Rptr. 218].)
(4) When there is a valid arrest for driving while under the influence of intoxicating liquor (Veh. Code, § 23102), or, because the driver or passenger of a vehicle is found to be under the influence of intoxicating liquor in any public place (Pen. Code, § 647, subd. (f)), an officer, as an incident to such arrest for the purpose of discovering evidence of the crime, may search the offender and the car in which he was observed. (People v. Robinson (1965) 62 Cal.2d 889, 894 [44 Cal. Rptr. 762, 402 P.2d 834]. See also, Martinez v. Superior Court, supra, 7 Cal. App.3d 569, 577; People v. Sirak (1969) 2 Cal. App.3d 608 [82 Cal. Rptr. 716]; People v. Gil (1967) 248 Cal. App.2d 189, 192 [56 Cal. Rptr. 88]; and note, People v. Villafuerte (1969) 275 Cal. App.2d 531, 536 [80 Cal. Rptr. 279] [under influence of heroin].)
In Bramlette v. Superior Court (1969) 273 Cal. App.2d 799 [78 Cal. Rptr. 532], it was held that where an officer properly stopped a panel truck for investigation, discovered the occupants were minors, and observed an opened partly empty jug of wine in the vehicle which was accessible to all of the occupants, he could reasonably assume that the offense of possession of an intoxicating liquor by a minor in violation of section 25662 of the Business and Professions Code was being committed in his presence. The arrest of the minors (see Pen. Code, § 836, subd. 3) was upheld. The prosecution was permitted to use the fruits of a subsequent search of the vehicle which revealed marijuana seeds in plain sight, and other marijuana and paraphernalia discovered in the framework and other parts of the vehicle, *944 and contraband which was apparently discarded by the accused while they were being transported in the patrol car (273 Cal. App.2d at p. 806).
In People v. Cowman (1963) 223 Cal. App.2d 109 [35 Cal. Rptr. 528], it was found that the officers had reasonable cause to stop the defendant's vehicle for investigation. The court noted, "... when the officers approached the car, after it had stopped, they observed the occupant in the rear seat drinking out of a beer bottle. It would seem that this observation would have been sufficient to justify the arrest of the driver of the vehicle and the party drinking the beer as well as a search of the vehicle. (Veh. Code, §§ 23121, 23122 and 23123.)" (223 Cal. App.2d at p. 118.) (The search was in fact justified by the defendant's subsequent consent.)
In People v. McCullough (1963) 222 Cal. App.2d 712 [35 Cal. Rptr. 591], after finding reasonable cause to stop a vehicle proceeding into an area of potential danger, the court upheld an ensuing arrest. It observed, "Here the officers observed open beer bottles on the floor of the car in front of the driver's seat, and some liquid spilled on the floor, and smelled the odor of alcohol. They could reasonably believe a misdemeanor was being committed in their presence. (Violation of Veh. Code, § 23121, drinking in a motor vehicle; violation of Veh. Code, § 23122, possession in a motor vehicle of alcoholic beverages in an opened container.)" (222 Cal. App.2d at p. 716.)
(5) So here, the perception that the defendant, a minor, had been drinking justified the officer's subsequent action in going to the vehicle to ascertain whether there was liquor in the car. In this case it is unnecessary to determine what limits there may be on a search for containers of an alcoholic beverage (cf. People v. Gil, supra, 248 Cal. App.2d 189, 192) because the opened container was in plain sight. (See Bramlette v. Superior Court, supra, 273 Cal. App.2d 799, 805-806; People v. Figueroa, supra, 268 Cal. App.2d 721, 725; People v. Cacioppo, supra, 264 Cal. App.2d 392, 395; and People v. McCullough, supra, 222 Cal. App.2d 712, 716.)[4]

*945 II
If the discovery of the opened container of beer warranted not only the arrest, but the jailing of the defendant, he could not complain of the subsequent body search and the seizure of the contraband. (6) It is well established that persons about to enter jails or penal institutions may be searched for the purpose of preventing the introduction of weapons or contraband into the premises, and for the purpose of inventorying the accused's property. (People v. Reed, supra, 202 Cal. App.2d 575, 579-580. See also People v. Mercurio, supra, 10 Cal. App.3d 426, 430; People v. Dukes, supra, 1 Cal. App.3d 913, 916; and People v. Wohlleben, supra, 261 Cal. App.2d 461, 462.) Nevertheless, the product of a search at the jail cannot be used against the accused if there was no right to take him into custody at all. (See, People v. Wohlleben, supra, 261 Cal. App.2d at p. 465.) Moreover, if the sole right to take into custody was for the purpose of taking the accused before a magistrate, or other officer authorized to admit him to bail, there is no right to conduct a body search. (See People v. Mercurio, supra, 10 Cal. App.3d 426, 431-432; and People v. Dukes, supra, 1 Cal. App.3d 913, 916. Note, Pen. Code, § 1269b, subd. (c); and Cal. Rules of Court, rule 850b, Uniform Traffic Bail Schedule.)
(7) In People v. Dukes, supra, the court expressly noted that the offenses of a passenger drinking in a car (Veh. Code, § 23121) and a driver allowing an open container in a car (Veh. Code, § 23122), were violations of the Vehicle Code, and that upon failure of either of the accused to produce satisfactory identification "... the custody allowed under Vehicle Code section 40302 subdivision (a) is limited to taking the arrestee before a magistrate. If the magistrate is unavailable, the officer must take the arrestee before the clerk of the magistrate or the officer in charge of the jail so he may be admitted to bail (Veh. Code, § 40307; see People v. Weitzer, 269 Cal. App.2d 274, 291, fn. 7 [75 Cal. Rptr. 318])." (1 Cal. App.3d at p. 916.)
The People seek to avoid the effect of the latter precedents by predicating the jailing of the defendant on his arrest for violation of the provisions of the Business and Professions Code (see fn. 2 above).

III
(8) Section 25662 of the Business and Professions Code (see fn. 2 above) was enacted in 1953 as a continuation of a provision added to the *946 1935 Alcoholic Beverage Control Act in 1951 (Stats. 1951, ch. 1085, § 1, p. 2814). It was modified to its present form in 1963 (Stats. 1963, ch. 396, § 1, p. 1203). The Vehicle Code provision, section 23123.5 (see fn. 2 above), was added in 1965 (Stats. 1965, ch. 1662, § 2, p. 3772). A comparison of the two statutes reveals that the former is broader in defining the place where the offense of possession of an alcoholic beverage by a minor may be committed  "on any street or highway or in any public place or in any place open to the public" as against "in any motor vehicle." The latter statute, however, covers not only knowledgeable possession, but also the situation when a minor knowingly transports, or has under his control, an alcoholic beverage in a motor vehicle. Both statutes exclude possession in the course of the minor's employment (more specifically defined in the Vehicle Code section), and the Vehicle Code section appears more restrictive in that possession, transportation, or control is permitted when the minor is accompanied by a parent or legal guardian, whereas the more general statute permits delivery by a minor pursuant to an order of his parent.
Despite the foregoing distinctions it is obvious that there is, as exists in this case, an overlap in the general situation where a minor possesses an alcoholic beverage in a motor vehicle. The legislative history of this statute indicates that it was intended to penalize the conduct prohibited by authorizing discretionary impoundment of a vehicle registered to the offender, and mandating a suspension of the offender's driver's license.[5] The new statute also had the effect of reducing the maximum penalty for the particular offense from a fine of not more than $500 or imprisonment in the county jail for not more than six months or by both (Bus. & Prof. Code, § 25617), to not exceeding $50 or five days upon a first conviction (Veh. Code, §§ 40000, subd. (b) and 42001, subd. (b)). The power of the Legislature to provide different penalties for violations of the Vehicle Code and other misdemeanors has been recognized. (See Sawyer v. Barbour (1956) 142 Cal. App.2d 827, 837 [300 P.2d 187].)
*947 The problem of overlapping provisions of the Penal Code and the Vehicle Code relating to taking of vehicles and concerning drunk driving, respectively, has been the subject of study. (See Cal. Law Revision Com., Recommendation and Study, November 1958.) With respect to the taking of an automobile the court observed in People v. Kehoe (1949) 33 Cal.2d 711 [204 P.2d 321], "Obviously the three statutes [Pen. Code, §§ 499 and 487, and Veh. Code, § 503] are part of a general legislative plan of protection and punishment conceived to prevent the taking or use of an automobile without the owners' consent. Different punishment is fixed to correspond with the intent with which each offense is committed, but the legislation is directed against one evil. Insofar as they relate to a single act of taking an automobile without the permission of the owner, section 503 of the Vehicle Code and section 487 of the Penal Code may subject the offender to but one punishment." (33 Cal.2d at p. 714. Cf. In re Hayes (1969) 70 Cal.2d 604, 607 [75 Cal. Rptr. 790, 451 P.2d 430].) In People v. Thomas (1962) 58 Cal.2d 121 [23 Cal. Rptr. 161, 373 P.2d 97], it was noted: "The distinction between the foregoing offenses is admittedly a subtle one, and would present a rather difficult problem if it were required that a court instruct a jury as to the distinction in a given situation. It may well be that the Legislature intended to leave the decision as to which section should be invoked in a particular case to the prosecutor." (58 Cal.2d at p. 126.)
On the other hand, in People v. Lewis (1934) 4 Cal. App.2d Supp. 775 [37 P.2d 752], the court concluded, on the assumption[6] that "intoxicated" as found in section 367d of the Penal Code was the equivalent of "under the influence of intoxicating liquor" as found in section 112 of the California Vehicle Act as adopted in 1923, that "certain well-established rules make it clear that section 367d of the Penal Code can no longer be regarded as in force except in regard to offenses not covered by the vehicle acts, such as the driving of a motor vehicle on private ground by one who is intoxicated." (4 Cal. App.2d Supp. at p. 778. See also People v. Fair (1967) 254 Cal. App.2d 890, 891, fn. 1 [62 Cal. Rptr. 632].) The distinction between the overlapping of the taking statutes which involve different intents, and the overlapping of the drunk driving statutes insofar as they only differ with respect to the place the offense was committed has been noted. (See People v. Bailey (1946) 72 Cal.2d Supp. 880, 883 [165 P.2d 558].)
A series of cases dealing with overlapping general and special statutes *948 defining crimes indicates that the rationale applied in People v. Lewis is controlling here. In re Williamson (1954) 43 Cal.2d 651 [276 P.2d 593] ruled that the express provision, formerly (deleted Stats. 1955, ch. 1062, § 1, p. 2030) contained in section 7030 of the Business and Professions Code, outlawing a conspiracy to violate the state contractor's law controlled the general provisions against conspiracies found in section 182 of the Penal Code. The court quoted with approval from People v. Breyer (1934) 139 Cal. App. 547, at page 550 [34 P.2d 1065, 1067], as follows: "It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. Where the special statute is later it will be regarded as an exception to or qualification of the prior general one; and where the general act is later the special statute will be considered as remaining an exception to its terms unless it is repealed in general words or by necessary implication."[7] (139 Cal. App. at p. 550.) The principle has been applied to preclude prosecution under the provisions of the Penal Code of criminal fraud specifically proscribed by provisions of the Welfare and Institutions Code. (See People v. Gilbert (1969) 1 Cal.3d 475, 479-481 [82 Cal. Rptr. 724, 460 P.2d 580]; People v. Legerretta (1970) 8 Cal. App.3d 928, 933 [87 Cal. Rptr. 587]; and People v. Silk (1955) 138 Cal. App.2d Supp. 899, 900-902 [291 P.2d 1013]; but cf. People v. Legerretta, supra, at p. 934.) Similar results have been established in connection with criminal fraud under the Unemployment Insurance Code. (See People v. Bogart (1970) 7 Cal. App.3d 257, 266 [86 Cal. Rptr. 737]; and People v. Koch (1970) 4 Cal. App.3d 270, 275 [84 Cal. Rptr. 629]; but cf. pp. 275-277.) A series of cases applied the principle to preclude prosecution under general criminal statutes for credit card offenses as the latter were proscribed by the former (see People v. Liberto (1969) 274 Cal. App.2d 460, 462-465 [79 Cal. Rptr. 306]) provisions of section 484a of the Penal Code. (See In re Williams (1969) 1 Cal.3d 168, 173 [81 Cal. Rptr. 784, 460 P.2d 984]; People v. Ali (1967) 66 Cal.2d 277, 279 [57 Cal. Rptr. 348, 424 P.2d 932]; People v. Scott (1968) 259 Cal. App.2d 589, 591-592 [66 Cal. Rptr. 432]; People v. Churchill (1967) 255 Cal. App.2d 448, 452-453 [63 Cal. Rptr. 312] [overruled on another issue People v. Bauer (1969) 1 Cal.3d 368, 378 [82 Cal. Rptr. 357, 461 P.2d 367]]; and People v. Swann (1963) 213 Cal. App.2d 447, 449-451 [28 Cal. Rptr. 830]; but cf. People v. Churchill, supra, at pp. 453-454.)
*949 In People v. Gilbert, supra, the court expressly ruled, "This overlap of provisions carrying conflicting penalties typifies the kind of conflict which we envisioned in Williamson; it requires us to give effect to the special provision alone in the face of the dual applicability of the general provision of the Penal Code and the special provision of the Welfare and Institutions Code." (1 Cal.3d at p. 481, fn. and citation omitted.) So here the varying penalties which have been referred to above, demonstrate that the special provisions of the Vehicle Code are to govern when the circumstances come within their purview.
(9) It is, therefore, concluded that the defendant could not be arrested or prosecuted under the general provisions found in section 25662 of the Business and Professions Code, but that he was chargeable with a violation of section 23125.5 of the Vehicle Code. He was not only subject to the extra penalties imposed by that section, but was also entitled to the rights of a person charged under the provisions of that code as they have been expounded above.

IV
The People do not give much weight to the alleged charge of contributing to the delinquency of a minor. They acknowledge the holding in People v. Simon (1955) 45 Cal.2d 645 [290 P.2d 531] where the court ruled, "The mere fact, however, that defendant was walking on the street with a 20-year-old friend who had a bottle did not constitute reasonable cause to believe that defendant was committing or attempting to commit an offense in the officer's presence by either aiding or abetting his friend in committing a crime or contributing to the delinquency of a minor. [Citations.]" (45 Cal.2d at p. 649.) They contend that the circumstances, as distinguished from those in Simon, were sufficient to give the officer reasonable cause to believe that the offense of contributing had been committed even though the evidence at the preliminary hearing demonstrates that the defendant could not have been successfully prosecuted for that offense. The charge was not included in the complaint, or the information, nor is there anything to show that the defendant was in fact booked in jail on that charge.
(10) It may be assumed that the furnishing of narcotics or marijuana to a minor (see Health & Saf. Code, §§ 11502, 11502.1 and 11532, and provisions of former § 11714) would necessarily encompass contributing to the delinquency of a minor. (See People v. Freytas (1958) 157 Cal. App.2d 706, 715 [321 P.2d 782].) The minor passenger's possession of the crutch could no more implicate the defendant than could the minor's bottle incriminate his companion in People v. Simon. Moreover, the People are *950 precluded from relying on any such theory by the officer's testimony that defendant's arrest had nothing to do with narcotics.
(11) Similarly, the furnishing of an intoxicating liquor to a minor (see, Bus. & Prof. Code, § 25658) may be deemed to be an act contributing to the delinquency of a minor. (See People v. Moore (1960) 183 Cal. App.2d 672, 676 [7 Cal. Rptr. 142]; People v. Laisne (1958) 163 Cal. App.2d 554, 556-557 [329 P.2d 725]; People v. Deibert (1953) 117 Cal. App.2d 410, 415-416 [256 P.2d 355]; and People v. Perfetti (1928) 88 Cal. App. 609, 610-615 [264 P. 318]. Cf. People v. Lamunuzzi (1926) 77 Cal. App. 301, 303-304 [246 P. 557]; and People v. Baker (1918) 38 Cal. App. 28, 32 [175 P. 88].) Nevertheless, there is nothing in the record to indicate that the defendant furnished his minor passenger with the intoxicating beverage that was found between the passenger's legs.[8] The trial court, in making its ruling on the record, of necessity found that the circumstances did not compel the inference that the officer had reasonable cause to arrest the defendant and keep him in custody for contributing to the delinquency of his companion. Even if this court were to find a conflicting inference reasonable, it would not disturb the implied finding of the trier of fact on evidence which permits conflicting inferences. (See Bergeron v. Superior Court, supra, 2 Cal. App.3d 433, 436.) The evidence, however, has little more dignity than that appraised in People v. Simon.

V
(12) There are overtones of other offenses in the record (see fns. 1 and 8 above). The prosecution, however, failed to develop a case for more than offenses cognizable under the provisions of the Vehicle Code. The record must be taken as it was made by the prosecution and submitted to the trial court. As it is so found and reviewed by this court, it is concluded that the trial court properly ruled that there was no ground for the jailing and strip search of the defendant. The evidence so elicited was properly suppressed. As pointed out by the defendant, there is no reason to subject the *951 20-year-old defendant, because of his minority (he not having been shown to have been intoxicated or under the influence of intoxicating liquor), to greater restraint than an adult who under similar circumstances is found to possess or keep an opened container of an alcoholic beverage in a vehicle in violation of sections 23122 or 23123 of the Vehicle Code. The search is of course not justified by what it may turn up. The "overkill" must be judged in reference to the situations where no contraband is disclosed. It may well breed disrespect, rather than respect for the law.
The alternative writ is discharged and the petition for a peremptory writ of mandate is denied.
Molinari, P.J., and Elkington, J., concurred.
A petition for rehearing was denied on February 4, 1971, and the following opinion rendered:
THE COURT.
In a petition for rehearing on behalf of the People, the Attorney General seeks a modification of the opinion which will construe Business and Professions Code section 25662 and Vehicle Code section 23123.5 as coexistent so that an officer may have the option to proceed under either statute. He contends that the decision will have an adverse effect upon enforcement officers of the Department of Alcoholic Beverage Control because the course to be followed in the event of a violation of the prohibition of possession of an alcoholic beverage by a minor will vary in accordance with whether the beverage is found in or out of a vehicle.
This consequence does not necessarily ensue. Section 24209 of the Business and Professions Code authorizes an officer arresting a person for a violation of any provisions of the Alcoholic Beverage Control Act to "release such person without taking such person before a magistrate upon such person's signing an agreement to appear...." (See also Pen. Code, § 853.6.) In the case of a minor under the age of 18 years the procedure following arrest is governed by the provisions of sections 625 and 626 of the Welfare and Institutions Code which provide the alternatives of releasing the minor, releasing him upon execution of a promise to appear, or delivering the minor to the probation officer. The statute contains the following mandate: "In determining which disposition of the minor he will make, the officer shall prefer the alternative which least restricts the minor's freedom of movement, provided such alternative is compatible with the best interests of the minor and the community."
The alleged inconsistency in treatment is more theoretical than real.
*952 The Attorney General also claims that there is a greater risk of harm to the public when the minor is in possession of an alcoholic beverage inside of a motor vehicle, and assumes that therefore more drastic action is indicated. Neither the sections involved nor this case deal with the situation where the minor possessor is under the influence of intoxicating liquor. (Veh. Code, § 23102; Pen. Code, § 367d; and Pen. Code, § 647, subd. (f).) The statutes noted provide adequate protection for the offender and the public when the situation discloses a violation. When as here, the sole offense is illegal possession, the potential hazard is removed by confiscation of the offending substance. Custody is only required to secure amenability to prosecution, not to mete punishment out contemporaneously with the arrest.
The People refer to section 40300 of the Vehicle Code which provides: "The provisions of this chapter shall govern all peace officers in making arrests for violations of this code without a warrant for offenses committed in their presence, but the procedure prescribed herein shall not otherwise be exclusive of any other method prescribed by law for the arrest and prosecution of a person for an offense of like grade." The section is addressed to the manner of making arrests for violations of the Vehicle Code, and it does not, as contended by the People, throw any light on the question of whether a Vehicle Code section provides the exclusive prohibition of conduct falling within its terms.
Reconsideration is also sought of the court's approval of the principle that there was no right to body search in connection with taking the accused before a magistrate or other officer for admission to bail. The court adheres to its position as applied to the Vehicle Code provisions involved in this case.
NOTES
[1] The sole witness at the preliminary examination was the arresting officer. The evidence which has been ordered suppressed was the only marijuana referred to or produced in connection with his direct examination. Cross-examination, however, brought out that a "back up" officer, who had responded to the arresting officer's radio call, entered the defendant's vehicle to search it, and according to the belief of the arresting officer uncovered two six-packs of beer, a baggie of marijuana and a water pipe, which the arresting officer indicated he took with him as he left the scene. The prosecution did not produce the second officer, nor any of the foregoing material either at the preliminary examination or at the hearing on the motion to suppress. The arresting officer expressly testified that the defendant was not charged with any offense that had to do with narcotics before the discovery of the evidence which is the subject of these proceedings when he was searched at the jail. In support of the trial judge's ruling it is concluded that he disregarded the hearsay evidence of probable cause to arrest for an offense upon which the prosecution did not choose to rely. No opinion is expressed as to the right of the People to use such evidence in another action, or in the pending prosecution, which was not dismissed (cf. Pen. Code, §§ 1538.5, subd. (j), 1385 and 1238, subd. 7), but was continued for plea following the contemporaneous denial of defendant's motion to dismiss under the provisions of section 995 of the Penal Code. It would appear, however, that the People by electing to secure appellate review of the order suppressing evidence, may be foreclosed from seeking to present additional evidence relating to the seizure of the evidence which was the subject of the motion. (See Pen. Code, § 1538.5, subd. (j).)
[2] Two provisions of law, discussed below, relate to this offense. Business and Professions Code section 25662 provides: "Any person under the age of 21 years who has any alcoholic beverage in his possession on any street or highway or in any public place or in any place open to the public is guilty of a misdemeanor. This section does not apply to possession by a person under the age of 21 years making a delivery of an alcoholic beverage in pursuance of the order of his parent or in pursuance of his employment."

Vehicle Code section 23123.5 provides: "(a) No person under the age of 21 years shall knowingly possess, transport, or have under his control in any motor vehicle any alcoholic beverage, unless such person is accompanied by a parent or legal guardian or is employed by a licensee under the Alcoholic Beverage Control Act (Division 9, commencing with Section 23000, of the Business and Professions Code), and is possessing, transporting or has such alcoholic beverage in a motor vehicle under his control during regular hours and in the course of his employment. [¶] (b) If the vehicle used in any violation of subdivision (a) is registered to such person under the age of 21 years, the vehicle may be impounded at the owner's expense for not less than one day nor more than 30 days for each violation. [¶] (c) Any such person under 21 years of age found under this section shall also have his driver's license suspended for not less than 15 days nor more than 30 days."
[3] Though an arresting officer reasonably fearing possible violence may search for weapons, in the case before us there is no evidence of suspected harm, and, in any event, the weapon pat-down proved fruitless. (See People v. Mercurio (1970) 10 Cal. App.3d 426, 429-430 [88 Cal. Rptr. 750]; and see People v. Dukes (1969) 1 Cal. App.3d 913, 916 [82 Cal. Rptr. 218]; People v. Weitzer (1969) 269 Cal. App.2d 274, 290-291 and 294 [75 Cal. Rptr. 318]; People v. Figueroa (1969) 268 Cal. App.2d 721, 726 [74 Cal. Rptr. 74]; and People v. Bordwine (1968) 268 Cal. App.2d 290, 292 [74 Cal. Rptr. 1].)
[4] The foregoing makes it unnecessary to consider the right to search the car as predicated upon an alleged furtive movement. The failure to stop a car within a reasonable time after activation of the red lights of a police car and furtive conduct in reaching down below the front seat toward the floorboard may warrant an inference that the person observed is hiding something under the front seat of the automobile, and so justify a search of that area of the car where it appeared the object was hidden. (See People v. Sirak (1970) 2 Cal. App.3d 608, 612 [82 Cal. Rptr. 716]; Bergeron v. Superior Court (1969) 2 Cal. App.3d 433, 435-436 [82 Cal. Rptr. 711]; People v. Brown (1969) 272 Cal. App.2d 448, 451-452 [77 Cal. Rptr. 438]; People v. Superior Court (1969) 272 Cal. App.2d 383, 387 [77 Cal. Rptr. 438]; People v. Bordwine (1968) 268 Cal. App.2d 290, 292 [77 Cal. Rptr. 646]; People v. Gil (1967) 248 Cal. App.2d 189, 193-194 [56 Cal. Rptr. 88]; People v. Shapiro (1963) 213 Cal. App.2d 618, 621-622 [28 Cal. Rptr. 907]; and People v. Sanson (1957) 156 Cal. App.2d 250, 253-254 [319 P.2d 422].) However, the credibility of the witnesses and the weight to be given their testimony is for the trial court. (Bergeron v. Superior Court, 2 Cal. App.3d at p. 436 [82 Cal. Rptr. 711].) In support of the order it must be inferred that the trial court accepted the testimony of the driver that he stopped within a reasonable time and that there was no opportunity to observe any untoward movement in the car.
[5] Assembly Bill No. 1450, as introduced in the 1965 regular (general) session of the Legislature, proposed the addition of section 23123.5 to the Vehicle Code. The first subdivision "(a)" read as in the enacted bill (see fn. 2 above). The second subdivision provided, "(b) Any vehicle used in violation of subdivision (a) shall be impounded at the owner's expense for not less than 15 days nor more than 30 days." The third subdivision provided for the mandatory suspension of the minor's driver's license as found in the enacted bill.

On May 25, 1965 the bill was amended in the Assembly by revising the language of subdivision "(b)" to that found in the enacted bill so that impounding was made discretionary for a period from one through 30 days, and only could apply to a vehicle registered to the minor. The Assembly amendment also included a revision of Vehicle Code section 23102 which added a similar provision authorizing impounding in the event of a conviction of a minor for driving while under the influence of intoxicating liquor. (See C.E.B. review of 1965 Legislation, pp. 269-270.)
[6] In People v. Haeussler (1953) 41 Cal.2d 252 [260 P.2d 8], the court disapproved People v. Lewis, supra, insofar as it failed to recognize that a person may be "under the influence of intoxicating liquor" without being affected to the extent commonly associated with "intoxication" or "drunkenness." (41 Cal.2d at pp. 262-263.)
[7] In People v. Breyer, supra, the court in fact found that the later adoption of the general provisions of section 484 of the Penal Code repealed by implication other specific statutes dealing with obtaining property by false pretenses. Note also, People v. Kreiling (1968) 259 Cal. App.2d 699, 702-704 [66 Cal. Rptr. 582] where no basic overlapping was found.
[8] It may be noted that the record reveals that after charging the defendant with possession of alcohol by a minor, the officer advised him of his constitutional rights, and the defendant refused to talk. The officer then talked to the passenger. On his return the defendant asked the officer what the passenger had said, and indicated that he wanted to make a statement. It was apparently thereafter that the defendant was informed that he was charged with contributing to the delinquency of a minor. The foregoing was brought out on the cross-examination of the officer at the preliminary hearing. The prosecution, however, made no attempt to develop what was said by the passenger or the defendant on the issue of probable cause at the preliminary hearing, nor was the subject of furnishing the beverage developed at the hearing on the motion to suppress when both the defendant and the passenger testified that the latter had the opened can of beer in his possession for some 10 minutes before its discovery by the officer.