[Crim. No. 3565.  Fourth Dist., Div. One.  Nov. 19, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
BILLY WAYNE DUKES, Defendant and Appellant.

**COUNSEL**

Peter B. Clarke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Marilyn K. Mayer, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**BROWN (Gerald), P. J.** — Billy Wayne Dukes appeals his court-tried conviction for possessing marijuana (Health & Saf. Code, § 11530).

About 7:30 p.m. June 28, 1968, California Highway Patrol Officer Smith saw Dukes speeding south in his Pontiac convertible on Interstate 5 in San Diego County north of Oceanside. Pursuing Dukes, Officer Smith saw him following dangerously close to another car as a passenger in Dukes' car, David Mitchell, drank beer from a paper bag covered bottle.

Calling for back-up help, Officer Smith stopped Dukes and asked for his driver's license or other identification. Dukes had neither. Highway Patrol Officer Robinette arrived in response to Officer Smith's call for back-up help as Smith returned Dukes to the Pontiac.

Dukes' passenger, Mitchell, a codefendant at the trial, threw his partially filled beer bottle in the rear of the car. Smith ascertained the bottle contained beer, then escorted Mitchell back to the patrol car where Mitchell produced an out-of-state driver's license. With Mitchell's consent, Smith searched his wallet finding a military identification bearing the name Herman Holiday. Being dissatisfied with Mitchell's identification, Smith arrested him for drinking in a car and took him into custody under Vehicle Code section 40302, subdivision (a), because of insufficient identification.

When asked what he did after arresting Mitchell, Smith said: "I started to search the defendant prior to placing him in the handcuffs, and as I reached into his left jacket pocket I encountered three objects. I pulled these out. They were hand rolled cigarettes."

The three cigarettes taken from Mitchell contained marijuana. Smith arrested Mitchell for possessing marijuana. Smith then searched the Pontiac and found a packet of Zig-Zag cigarette papers in the glove compartment.

Officer Robinette saw Smith take the three marijuana cigarettes from Mitchell's pocket and saw Smith break open one of the cigarettes. Robinette arrested Dukes for allowing an open container in the car and took him into custody because he had no identification. Robinette searched Dukes, starting from the top and working down. Robinette first "reached into his shirt pocket and found what appeared to be a cigarette wrapper with some debris." Robinette did not first pat the outside of Dukes' pocket nor did he see a bulge in the pocket that would indicate a weapon. He simply reached into the pocket "to see if there was possibly something that would be there of an offensive type." The cigarette wrapper and debris

found in Dukes' shirt pocket included a marijuana cigarette butt. Continuing his search Robinette found a pipe (for smoking) and some bullets.

Robinette said his standard practice in making a pat down search was to start at the top and work his way down *going through all the pockets.*

Robinette re-arrested Dukes for possessing marijuana. The officers took Dukes and Mitchell to the Oceanside police station where a thorough search of their persons disclosed additional marijuana debris. A police chemist found two marijuana seeds in Dukes' pipe. After Dukes' car was impounded, Officer Robinette and a sheriff's deputy searched the Pontiac and found three seeds which Robinette said appeared to be marijuana. Testimony concerning these seeds was stricken by the court as the physical evidence was not preserved nor was it identified by an expert. The Attorney General improperly refers to this stricken evidence in his brief, and compounds the impropriety by bootstrapping it into positive evidence the officers "found three marijuana seeds in the rear of appellant's car."

■ An arrest for a traffic offense justifies a limited search of the offender for weapons. *People* v. *Graves,* 263 Cal.App.2d 719, 733-734 [70 Cal.Rptr. 509] states the rules: "[A] valid arrest for a traffic offense permits a search by the arresting officer of the arrestee's person for weapons, but does not justify a complete search of his person for evidence of other unrelated crimes unless the officer has probable cause for believing that the traffic offender is guilty of a crime other than the traffic offense for whch he is being arrested. In the latter instance, the arresting officer is entitled to conduct a contemporaneous search of the offender's person not only for weapons, but also for the fruits of or the implements used to commit crime."

■ That the officers were warranted in taking both Mitchell and Dukes into custody for the traffic offenses because of their unsatisfactory identification does not expand the scope of the search permissible under the Fourth Amendment to the United States Constitution. ■ Conceding a person arrested for a jailable offense might be searched for contraband in the field (since he may be thoroughly searched when booked to prevent contraband from being introduced into the jail), the custody allowed under Vehicle Code section 40302, subdivision (a), is limited to taking the arrestee before a magistrate. If the magistrate is unavailable, the officer must take the arrestee before the clerk of the magistrate or the officer in charge of the jail so he may be admitted to bail (Veh. Code, § 40307; see *People* v. *Weitzer,* 269 Cal.App. 274, 291, fn. 7 [75 Cal.Rptr. 318]).

■ Because the arrests of Mitchell and Dukes and the searches of

their persons were without warrants, the People carried the burden of justifying them. (*People* v. *Henry,* 65 Cal.2d 842, 845 [56 Cal.Rptr. 485, 423 P.2d 557].) ▮ Officer Smith had no reason to believe Mitchell had committed any crimes other than drinking beer from an open container in a car. He knew the container was in the car. He did not feel the outside of Mitchell's clothing to search for bulges which might indicate he carried a weapon. Smith simply reached into Mitchell's pocket and found three marijuana cigarettes. This search exceeded the scope permitted by the Fourth Amendment. *Sibron* v. *New York,* 392 U.S. 40, 65 [20 L.Ed.2d 917, 936, 88 S.Ct. 1889, 1904], sets the standard applicable here: "Even assuming *arguendo* . . . there were adequate grounds to search Sibron for weapons, the nature and scope of the search conducted by Patrolman Martin were so clearly unrelated to that justification as to render the heroin inadmissible. The search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. Only when he discovered such objects did the officer in *Terry* place his hands in the pockets of the men he searched. In this case, with no attempt at an initial limited exploration for arms, Patrolman Martin thrust his hand into Sibron's pocket and took from him envelopes of heroin. His testimony shows . . . he was looking for narcotics, and he found them. The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man. Such a search violates the guarantee of the Fourth Amendment, which protects the sanctity of the person against unreasonable intrusions on the part of all government agents."

▮ Robinette's search of Dukes similarly exceeded the permissible scope announced in *Sibron* unless he had reason to believe Dukes was guilty of a crime other than his traffic offense. (*People* v. *Graves, supra,* 263 Cal.App.2d 719, 733-734.) While Robinette saw Smith take three hand-rolled cigarettes from Mitchell's pocket, that observation may not be used to justify an extensive search of Dukes as it directly resulted from the illegal search of Mitchell. Probable cause to search Dukes may not be founded on the illegal search of Mitchell (*People* v. *Superior Court,* 71 Cal.2d 265, 272-273 [78 Cal.Rptr. 210, 455 P.2d 146]). Robinette's finding the pipe in Dukes' pocket did not reasonably lead him to a belief Dukes had contraband on his person as this discovery followed finding the marijuana and it was not until a police chemist examined the pipe that two marijuana seeds were found. Moreover, Robinette did not seek to justify his search on finding the pipe or the bullets. He was following his standard

practice of going through all of a suspect's pockets to "see if there was possibly something that would be there of an offensive type."

The court erroneously admitted the marijuana evidence found on Dukes and Mitchell.

Judgment reversed.

Coughlin, J., and Whelan, J., concurred.